**Larry T. BASS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 63A01–1007–CR–340.

Court of Appeals of Indiana.

April 14, 2011.

Rehearing Denied June 22, 2011.

Thomas A. Dysert, Petersburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Larry T. Bass appeals his convictions and aggregate sentence of seven years with two years suspended for Class C felony child molesting and Class C felony attempted child molesting. Bass contends that: (1) the trial court erred by denying his motion for a directed verdict, (2) the State committed prosecutorial misconduct during closing arguments by referring to him as a pervert and explaining why and how child molesters target thirteen-year-old children, and (3) his sentence is inappropriate. We conclude that touching a child's breasts or genitals is not required to sustain a child molesting conviction under Indiana Code section 35-42-4-3(b). The trial court did not err by denying Bass's motion for a directed verdict. Further, because Bass has waived his claim of prosecutorial misconduct, he must show fundamental error. There is no fundamental error. Finally, Bass has failed to persuade us that his sentence is inappropriate. We therefore affirm.

### Facts and Procedural History

In the summer of 2009, thirteen-year-old E.B. often spent the night at her sister Anna's house in Winslow, Pike County, Indiana. Anna lived there with her boyfriend Bass and their infant daughter. One night, Bass, dressed only in sleep shorts, woke E.B. while she was asleep in the living room recliner. Bass said he could not sleep and told E.B. to "entertain" him. Tr. p. 145. E.B. told him to watch television so she could go back to sleep. Instead, Bass continued talking and told E.B. at some point that he would take off his shorts if she did not entertain him. Bass began rubbing E.B.'s back. He rubbed her entire back and touched her sides. E.B. put her arms down because "[she] didn't want him to touch [her] stomach or anything." Id. at 148. Bass then said he had a rash on his inner thigh and told her to "feel it." Id. at 149. E.B. declined and told him to leave her alone. Bass took off his shorts, and E.B. rolled away from him. When Bass's daughter

woke in another room, he put on his shorts and left.

Later that summer, Bass, Anna, and their daughter were living with E.B. and Anna's mother, Phyllis. One morning, Phyllis walked into the living room and saw Bass, dressed only in boxers, kneeling next to E.B. as she slept on the couch. Bass had one hand on his "crotch," *id.* at 164, and one hand on the couch almost touching E.B.'s body. Phyllis asked him what he was doing. He said he was looking for the remote and left. When Phyllis walked over to the couch, she saw that the blanket covering E.B. was pushed up past her waist. With the way E.B.'s shorts were positioned, Phyllis could see her "crotch." *Id.* at 169.

Both incidents were reported to the police. The State charged Bass with Class C felony child molesting for the first incident and Class C felony attempted child molesting for the second incident. Ind.Code §§ 35–42–4–3(b), –41–5–1.

E.B. and Phyllis testified at a jury trial. After the State rested, Bass moved for a directed verdict. As to the child molesting count, Bass argued that there was no evidence that he acted with intent to arouse or satisfy his sexual desires when he rubbed E.B.'s back. As to the attempted child molesting count, Bass argued that there was no evidence that he intended to touch E.B. The State argued that there was sufficient circumstantial evidence supporting both counts. The trial court denied the motion.

During closing arguments, the State used the word "pervert" four times. Bass objected to the State's pervert reference, and the trial court sustained the objection. Also during closing arguments, the State explained why and how child molesters target thirteen-year-old children. Bass objected. The trial court overruled the objection.

The jury found Bass guilty as charged. The trial court later sentenced him to concurrent terms of seven years with two years suspended.

Bass now appeals.

## Discussion and Decision

Bass contends that the trial court erred by denying his motion for a directed verdict, the State committed prosecutorial misconduct during closing arguments by referring to him as a pervert and explaining why and how child molesters target thirteen-year-old children, and his sentence is inappropriate.

### I. Directed Verdict

Bass first contends that the trial court erred by denying his motion for a directed verdict.

A trial court appropriately grants a motion for a directed verdict when there is a total lack of evidence regarding an essential element of the crime or when the evidence is without conflict and susceptible only to an inference in favor of the defendant's innocence. *McClendon v. State*, 910 N.E.2d 826, 836 (Ind.Ct.App.2009), *trans. denied.* If the evidence is sufficient to sustain a conviction upon appeal, then a motion for a directed verdict is properly denied; thus, our standard of review is essentially the same as that upon a challenge to the sufficiency of the evidence. *Id.* We neither reweigh evidence nor judge witness credibility, but consider only the evidence that supports the conviction and the reasonable inferences to be drawn therefrom in order to determine whether there is substantial evidence of probative value from which a reasonable factfinder could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

The offense of child molesting as a Class C felony is set forth in Indiana Code section 35–42–4–3(b), which provides, "A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." Mere touching alone is insufficient to constitute the crime of child molesting. *Nuerge v. State,* 677 N.E.2d 1043, 1048 (Ind.Ct.App.1997), *trans. denied.* The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id.* The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. *Id.*

### A. Child Molesting

To convict Bass of child molesting as charged here, the State had to prove that Bass touched E.B.'s back with intent to arouse or satisfy his own sexual desires. I.C. § 35–42–4–3(b); Appellant's App. p. 16.

Bass argues that he never touched E.B.'s breasts or genitals. He fails to cite any authority, however, and we find none, stating that child molesting requires touching of a child's breasts or genitals. Instead, the plain language of Section 35–42–4–3(b) requires merely touching with intent to arouse or satisfy sexual desires. We conclude that touching a child's breasts or genitals is not required to sustain a child molesting conviction under Section 35–42–4–3(b). *See Altes v. State,* 822 N.E.2d 1116, 1121–22 (Ind.Ct.App.2005) (finding sufficient evidence to sustain child molesting conviction where defendant touched victim's feet, legs, and bottom and another child molesting conviction where defendant touched another victim's upper body), *trans. denied; Nuerge,* 677 N.E.2d at 1049 (finding sufficient evidence to sustain child molesting conviction where defendant touched victim's leg, kissed inside of her upper thigh, and moved his hand inside the bottom of her shorts).

Bass also argues that E.B. testified that she never thought he was making sexual advances toward her. Even so, the evidence shows that Bass, wearing only sleep shorts, woke E.B. during the night, told her to entertain him, and threatened to take off his shorts if she did not do so. Bass then rubbed E.B.'s entire back and sides, told E.B. to feel a rash on his inner thigh, and took off his shorts. This is sufficient evidence from which a reasonable factfinder could have concluded that Bass touched E.B. with intent to arouse or satisfy his own sexual desires.

### B. Attempted Child Molesting

To convict Bass of attempted child molesting as charged here, the State had to prove that Bass took a substantial step toward committing child molesting by touching his own body and attempting to touch E.B. with intent to arouse or satisfy his own sexual desires. I.C. §§ 35–42–4–3(b), –41–5–1; Appellant's App. p. 17.

The evidence shows that sometime after the child molesting incident at Anna's house, Phyllis saw Bass, wearing only boxers, kneeling next to E.B. as she slept. E.B.'s blanket was pushed up past her waist and her shorts were positioned such that her crotch was visible. Bass had one hand on his crotch and one hand on the couch almost touching E.B.'s body. This is sufficient evidence from which a reasonable factfinder could have concluded that Bass touched himself and attempted to

touch E.B. with intent to arouse or satisfy his own sexual desires.

Bass nonetheless argues that "[e]ven if this court were to find that Bass was looking at E.B. with his hands on his crotch and that he was arousing or satisfying his own sexual desires, that would constitute the crime of vicarious sexual gratification not an attempted child molesting." Appellant's Br. p. 10. We disagree. The evidence and reasonable inferences most favorable to the verdict reflect that Bass did much more than touch himself and look at E.B. Instead, they suggest that Bass also pushed E.B.'s blanket up past her waist, looked at her crotch, and would have touched her had her mother not appeared.

Bass also challenges the credibility of Phyllis's testimony. He argues that she could not specify whether his hand was inside or outside his boxers. He also points out that she testified that his back was to her and thus claims that she could not have seen whether his hand was on his crotch. As an initial matter, we note that Phyllis clarified at trial that Bass's side was facing her. See Tr. p. 165. In any event, Bass's arguments ask us to reassess witness credibility, which we may not do.

Bass further argues that he was only looking for the remote. It was within the province of the jury to disbelieve his explanation to Phyllis. We decline Bass's invitation to reweigh the evidence.

The State presented sufficient evidence from which a reasonable factfinder could have concluded that Bass committed child molesting and attempted child molesting. We thus conclude that the trial court did not err by denying Bass's motion for a directed verdict.

## II. Prosecutorial Misconduct

Bass next contends that the State committed prosecutorial misconduct during closing arguments by referring to him as a pervert and explaining why and how child molesters target thirteen-year-old children.

■■■■ Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, but he must also request an admonishment and, if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. *Lainhart v. State,* 916 N.E.2d 924, 931 (Ind.Ct.App.2009). The trial court sustained Bass's objection to the State referring to him as a pervert and overruled Bass's objection to the State's explanation of why and how child molesters target thirteen-year-old children. However, because Bass did not request an admonishment or move for a mistrial after the court made its rulings, he has waived his prosecutorial misconduct claims and must show fundamental error in order to be entitled to reversal. *See Brown v. State,* 799 N.E.2d 1064, 1066 (Ind.2003) ("Because Brown failed to request an admonishment or move for a mistrial when the trial court overruled his objection, his claim of prosecutorial misconduct is procedurally foreclosed and reversal on appeal requires a showing of fundamental error.").

■■■■ In order for prosecutorial misconduct to constitute fundamental error, the misconduct must constitute a clearly blatant violation of basic and elementary principles of due process, present an undeniable and substantial potential for harm, and make a fair trial impossible. *Lainhart,* 916 N.E.2d at 931. Additionally, the alleged misconduct must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Id.* at 931–32. The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of

the conduct. *Id.* at 932. In judging the propriety of a prosecutor's remarks, the court considers the statements in the context of the argument as a whole. *Id.*

■ During closing arguments, the State asked the jury members what they first thought when they heard evidence that Bass woke E.B. in the middle of the night and asked her to entertain him. The State continued, "Did your instinct scream pervert? Sexual pervert?" Tr. p. 202. Later, the State asked the jury members if they could think of any circumstance in which they would offer to drop their shorts in front of a thirteen-year-old girl. The State continued, "Can you think of any circumstance, other than the fact that it is what it looks like it is, and Mr. Bass here is a sexual pervert." *Id.* at 203. The State later described the circumstances of the attempted child molesting charge as "[c]ircumstances that cannot be explained other than the fact that Larry Bass is a pervert." *Id.* at 206–07. At this point, Bass objected. The State responded, "Your Honor, if he'd rather I'd refer to him as a child molester. I can. That's what he's charged with." *Id.* at 207. The trial court sustained the objection. The State then continued, "Alright. [Bass] objects to that word." *Id.*

Bass argues that the State's references to him as a pervert and comment that he objects to the word "pervert" constitute fundamental error. We disagree. When considering these statements in the context of the State's closing argument as a whole, it is apparent that the State used the term "pervert" as slang for "child molester." The evidence shows that on one occasion, Bass woke E.B. during the night, told her to entertain him, rubbed her back and sides, told her to feel a rash on his inner thigh, and took off his shorts. The evidence shows that on another occasion, Bass had one hand on his crotch and the other hand so close to E.B. that it nearly touched her body. Because the evidence against Bass was strong, the probable impact of the State's reference to him as a pervert was slight.

Moreover, the jury was informed during preliminary instructions that closing arguments are not evidence, *see id.* at 128 ("These final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit."), and was informed during final instructions that "[s]tatements made by the attorneys are not evidence," *id.* at 227. The jury was thus instructed that the State's closing argument was not evidence.

Further, the State's comments were not coupled with insinuations of special knowledge not presented to the jury, and the State stopped referring to Bass as a pervert after the objection. Under these circumstances, we conclude that the State's references to Bass as a pervert do not amount to fundamental error. *See Ellison v. State*, 717 N.E.2d 211, 215 (Ind.Ct.App. 1999) (concluding that prosecutor's repeated references to defendant as a murderer during closing arguments in murder and attempted murder trial not fundamental error where evidence against defendant was strong, probable impact on jury was slight, jury was instructed about proper use and consideration of prosecutor's argument, prosecutor's comments not coupled with insinuations of special knowledge not presented to jury, and prosecutor's comments not made willfully after warnings by court), *trans. denied.*

Also during closing arguments, the State explained why and how child molesters target thirteen-year-old children:

Look, one reason adults approach kids for this type of sexual conduct is because

thirteen (13) year olds inherently are confused as to the signals that the molester is sending to them. It's subtle. It's not direct. Molesters don't come up, and as I said, grab the child by the breast or the groin ...

Tr. p. 218–19. Bass objected. The trial court overruled the objection.

Bass argues that the State's comments amount to fundamental error. However, because the evidence against Bass was strong and the jury was instructed that closing arguments are not evidence, we cannot say that these comments were sufficient to have a probable persuasive effect on the jury's decision or subject Bass to grave peril. We conclude that there is no fundamental error.

### III. Inappropriate Sentence

■ Bass finally contends that his aggregate sentence of seven years with two years suspended is inappropriate.

■ Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind.2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007)). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)). In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind.2010).

Bass was convicted of two Class C felonies. The statutory range for a Class C felony is between two and eight years, with the advisory sentence being four years. Ind.Code § 35–50–2–6(a). The trial court sentenced Bass to concurrent terms of seven years with two years suspended.

As for the nature of the offenses, Bass preyed on his girlfriend's younger sister and violated a position of trust. He told E.B. that he would take off his shorts if she did not entertain him, rubbed her back and sides, ignored her pleas to leave her alone, and took off his shorts. In the other incident, he had one hand on his crotch while his other hand nearly touched E.B. as she slept.

As to Bass's character, we acknowledge that Bass does not have an extensive criminal history. At the time of sentencing, however, he had pending charges for child molesting, possession of marijuana, and possession of paraphernalia. Regarding drug use, Bass admitted he would buy "and smoke maybe 1 or 2 times a week." Appellant's App. p. 86. He also stated that he is "maybe over $1000.00 behind" in child support payments. *Id.* at 85.

Bass has failed to persuade us that his aggregate sentence of seven years with two years suspended is inappropriate in light of the nature of the offenses and his character.

Affirmed.

BAKER, J., and BARNES, J., concur.