# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 03 2017, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender

Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shannon Randolph, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 3, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1605-CR-972 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark Stoner, Judge <br><br> Trial Court Cause No. <br> 49G06-1502-F1-4006 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Shannon Randolph appeals his convictions for Level 1 felony rape, two counts of Level 3 felony rape, and one count of Level 3 felony robbery resulting in bodily injury. He argues that the State committed prosecutorial misconduct when it accused one of his attorneys of "victim blaming" and "vouched" for the victim's testimony. Finding no error, we affirm.

# Facts and Procedural History

[2] The evidence most favorable to the verdicts is that in September 2014 Randolph and N.D. began a consensual, sexual relationship, which ended when N.D. found out that Randolph had a "girlfriend" (Randolph was actually married at the time). Randolph and N.D. continued to text off and on, and on November 7, 2014, they met at N.D.'s apartment. They talked, watched a movie, and consumed alcohol. At one point during the evening, N.D. got up to use the bathroom. When N.D. exited, Randolph was waiting outside the bathroom door for her; he grabbed her and began kissing her. N.D. repeatedly asked him to stop. Randolph threw her to the ground by her hair, climbed on top of her, ripped off her underwear,[1] bit her lip, performed oral sex on her, and inserted his penis inside her vagina. Throughout the ordeal N.D. screamed for him to stop. Randolph punched N.D. in the mouth and told her, "Shut up. I'll go get

---

[1] N.D. testified that she took off her sweatpants and left them by the bed before using the bathroom. She had not put her sweatpants back on when Randolph grabbed her and began kissing her. *See* Tr. p. 181-82.

my gun." Tr. p. 149. N.D. believed this threat was credible because Randolph had previously brought a gun to her apartment on two separate occasions. Randolph eventually removed his penis from her vagina and placed it in her mouth, where he ejaculated. N.D. spit out his ejaculate and asked him to leave.

[3] On his way out of the apartment, Randolph grabbed N.D.'s TV, cellphone, laptop, and wallet. Realizing she would have no way to call police if Randolph left with her phone, N.D. tried to stop Randolph. He punched N.D. in the mouth a second time and threw her to the ground by her hair, this time ripping out part of her weave. Randolph walked to his car with N.D.'s belongings. Fearing that Randolph was going to his car to get his gun, N.D., who was naked from the waist down, ran to a neighbor's apartment for help. The neighbor let her inside, gave her a sheet to cover herself, and called 911. The police responded, and N.D. was taken to the hospital for a sexual-assault exam. N.D. identified Randolph for police from a photo array; Randolph was later arrested and charged with eight felonies and one misdemeanor.

[4] During closing arguments of the jury trial, Randolph's attorney brought up the fact that Randolph and N.D. had been drinking on November 7. He argued that N.D. and Randolph engaged in consensual sex that night and that afterward N.D., upon discovering that Randolph was married, attacked Randolph:

> [Defense Attorney 1:] Now I want to talk also about what was going on that night prior to this. They had been drinking. This call came in around 2:00 in the morning. [N.D.'s] blood was

drawn at 4:27, that's two and a half hours after this incident - - the end of this incident. Two and a half hours later. And her blood alcohol content was still .10. She was legally intoxicated. It was going down, not up, following this event. So we really don't know what blood alcohol content she was at the time that this occurred, but it was higher than .10, which is the legal limit of intoxication. So we could say for certain[] that she was drunk. Does that mean that if something happened that she deserved it? No. That's not what I'm saying. I'm just simply saying it goes to whether or not she might have overreacted to something - - to what she found out about Mr. Randolph and his marital relationship. People do stupid stuff when they are drunk.

*Id.* at 348.

[5] During the State's three-minute rebuttal, it responded to defense counsel's suggestion that N.D. was drunk and possibly overreacted to the news that Randolph was married:

> [State]: Every single piece of physical evidence says rape. It says rape. And the alcohol, that's victim blaming. Because you know what, if you drink - -
>
> [Defense Attorney 1:] Objection. Objection.
>
> [Defense Attorney 2:] Judge, I'm sorry. This is all prosecutorial misconduct - -
>
> [Defense Attorney 1:] This is too much.
>
> [Defense Attorney 2:] By saying that we cannot or we can argue on behalf of our client, we are going to ask for another admonishment regarding prosecutorial misconduct and what

they are allowed to comment upon and what they are not
allowed to comment upon when we defend our client.

[Judge:] I'm not going to give the same admonition that I just
have given to you a minute ago. And so, Ladies and Gentlemen,
the Court would remind you, again, when I previously
admonished you on. And, again, if we can restrict our argument
to the evidence please. You may continue.

*Id.* at 354-55. In its prior admonishment, the court instructed the jury that "[the

closing] argument is not evidence. You base your decision based on the

evidence that you heard from the stand and the law as the Court gives it [to]

you." *Id.* at 353.

[6] The State concluded its rebuttal argument:

[State:] Ladies and Gentlemen, a prosecutor's wors[t] nightmare
is, I believe her but - - I believe her but I wanted more. I believe
her but I wanted the gun. And if he had a gun he would be
charged with armed [sic]. He's not. He's charged with a threat.

[Defense Attorney 1:] Judge, objection.

[Judge:] Overruled.

[Defense Attorney 1:] Well, first of all she's talking about what
she believes.

[Judge:] You're correct about that. But we've got one minute
left. Let's finish it.

[State:] Thank you, Judge.  As I was saying the prosecutor's worst nightmare is I believe her but.

[Defense Attorney 1:] She's about to - -

[Defense Attorney 2:] Judge, I'm sorry.

[Judge:] Sustained. [Prosecutor] take the word I out of your vocabulary.

[State:] Okay.

[Judge:] You cannot use I in final argument. . . .  What you believe isn't the issue here. It's what the jurors believe.

[State:] If you get back there and say you believe her but, but when you walked into this courtroom yesterday you've never heard of [N.D.], you've never heard of Shannon Randolph and you've never heard of what he did to her on November 7th, 2014. So when you get to I believe her, that's guilty on all counts. Thank you.

*Id.* at 357-58.  The judge then gave final instructions to the jury.  Instructions eight and ten were similar to the admonishments and informed the jury that the unsworn statements from the attorneys were not evidence and that the verdict was to be based on the evidence, law, and facts.  *See* Appellant's App. Vol. II pp. 121, 123.  The jury then retired to deliberate.

[7] During deliberations, Randolph moved for a mistrial and argued that the admonishments were not sufficient.  The court denied the motion:

The court does know that, one, it was a sustained objection, two, admonished jury, three, Court gave both Final Instructions in addition to the admonishment, the Court gave Final Instruction number 8, as well as number 10, which were given within a very short period of each other. The totality of the argument in question that was objected to was a three minute argument. The Court doesn't find that the Defendant was placed in grave peril which is the standard for mistrial. . . . It was a very quick and contentious rebuttal to the point where it was difficult what was being said from the objection from the admonishment. So I will relisten to it while the jury is deliberating. But my initial assessment in being here in front of the jury and watching their demeanor while I was giving the admonishment, I don't believe the Defendant was placed in grave peril. So I am denying the motion for mistrial at this time.

Tr. pp. 361-62.

[8] The jury found Randolph guilty on all nine counts. For double jeopardy reasons, the court entered judgment of conviction on only four counts—one count of Level 1 felony rape, two counts of Level 3 felony rape, and one count of Level 3 felony robbery resulting in bodily injury—and sentenced him to an aggregate term of thirty-two years in the Department of Correction, with eight years suspended and three years of probation.

[9] Randolph now appeals.

# Discussion and Decision

[10] Randolph contends that the State committed prosecutorial misconduct when it accused one of his attorneys of "victim blaming" and "vouched" for N.D.'s

testimony. In order to preserve a claim of prosecutorial misconduct, the defense must raise a contemporaneous objection and request an admonishment. *Bass v. State*, 947 N.E.2d 456, 461 (Ind. Ct. App. 2011), *trans. denied.* If an admonishment is not given or is insufficient to cure the error, the defense must request a mistrial. *Id.* When reviewing a properly preserved claim for prosecutorial misconduct, "we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id.*

[11]    Randolph first argues that the State engaged in prosecutorial misconduct when it said, "And the alcohol, that's victim blaming." Tr. p. 354. Randolph's counsel was the one who initially argued that alcohol might have played a part in the events of November 7. The State's comment about alcohol was in response to defense counsel's statement that N.D. was "legally intoxicated" and as a result "might have overreacted" to finding out Randolph was married. Id. at 348. The State is "entitled to respond to allegations and inferences raised by the defense even if the [State's] response would otherwise be objectionable." *Ryan v. State*, 9 N.E.3d 663, 669 (Ind. 2014). Given that the State's comment about "victim blaming" was in response to allegations from Randolph's counsel, we conclude that the State's argument did not constitute misconduct.

[12] Randolph next argues that the State engaged in prosecutorial misconduct in its rebuttal by "vouching" for N.D.: "[A] prosecutor's wors[t] nightmare is, I believe her but - - I believe her but I wanted more." *Id.* at 357. Randolph argues that this statement was the State expressing its "personal nightmare" that it believed N.D. but that the jury might not, a violation of the Indiana Rules of Professional Conduct. Appellant's Br. p. 15-16. The State contends that the prosecutor was merely explaining that her "nightmare" is when a **juror** thinks to himself or herself, "I believe the victim, but I wanted some more evidence beyond her testimony." Appellee's Br. p. 16. We agree with the State's explanation. After the court sustained Randolph's objection, it instructed the State to remove the word "I" from its closing argument. The State then concluded its rebuttal by saying, "If **you** get back there and say **you** believe her . . . when **you** get to I believe her, that's guilty on all counts." Tr. p. 358 (emphasis added). Rephrasing its argument, the State illustrated that it was not "vouching" for N.D.'s testimony, but rather addressing any potential shortcomings in its case and what was required for the jury to reach a guilty verdict under the beyond-a-reasonable-doubt standard. This is not misconduct.

[13] Even if one of the challenged statements constituted misconduct, Randolph was not placed in a position of grave peril. Randolph objected to both statements; both objections were sustained; and the court, at Randolph's request, gave an admonishing statement to the jury after the "victim blaming" comment. Additionally, the final jury instructions were given immediately after the close of the State's three-minute rebuttal. They included additional guidance for the

jury on what was and was not evidence to be considered when reaching its verdict, and there was sufficient physical evidence presented at trial to support Randolph's conviction: N.D.'s ripped panties, chunks of N.D.'s hair on the floor, bruises on N.D.'s body, a cut on N.D.'s lip, and Randolph's semen on N.D.'s body. Furthermore, when the trial court ruled on Randolph's motion for a mistrial, it explicitly stated that it watched the demeanor of the jury during the admonishments and that it believed Randolph was not placed in grave peril. Based on the physical evidence and the court's observations of the jury during the admonishing statements, we conclude that, even if the challenged statements during the State's rebuttal had been misconduct, they had no probable persuasive effect on the jury's verdict.

[14] Affirmed.

Bradford, J., and Brown, J., concur.