## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2017, 6:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Borschel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Chadwick, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 9, 2017 <br><br> Court of Appeals Cause No. 49A02-1606-CR-1195 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila Carlisle, Judge <br><br> Trial Court Cause No. 49G03-1509-FA-31220 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Kevin Chadwick (Chadwick), appeals his conviction for Count I, child molesting, a Class A felony, Ind. Code § 35-42-4-3(a)(1) (2012); Count II, attempted child molesting, a Class A felony I.C. §§ 35-42-4-3(a)(1); -41-5-1 (2012); and Count III, child molesting, a Class C felony, I.C. § 35-42-4-3(b) (2012).

[2] We affirm.

# ISSUE

[3] Chadwick raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond reasonable doubt to convict Chadwick of his offenses.

# FACTS AND PROCEDURAL HISTORY

[4] R.P. was born on August 1, 2000, and at the time, R.P.'s parents were renting an apartment in Indianapolis, Indiana. When R.P. turned one, Chadwick—who was a close friend to R.P.'s parents and a neighbor residing in the same apartment complex—would occasionally babysit R.P. for short periods of time when R.P.'s parents were running errands. In November of 2006, R.P.'s family relocated to South Carolina. Sometime in 2007, R.P.'s family moved back to Indianapolis. R.P.'s family rented an apartment in a one-story building in the same apartment complex they had resided in prior to their move to South Carolina. At this time, R.P. was about seven years old, and Chadwick, who was still living in the same apartment complex, resumed his babysitting duties.

During one occasion, R.P. was in his bedroom watching television in bed, and Chadwick walked into R.P.'s bedroom, sat next to R.P., pulled down R.P.'s pants, and proceeded to touch R.P.'s penis with his hands. R.P. was uncomfortable and he pushed himself away "over and over again" until Chadwick stopped touching his penis. (Tr. p. 42). Also, when R.P. was about seven years old, another instance of molestation occurred. R.P. was home alone with Chadwick, and Chadwick "put his hand down [R.P.'s] pants and started rubbing [his] thigh and [his] penis." (Tr. p. 43). After that, Chadwick then put his "mouth on [R.P.'s] penis" and "his head was moving." (Tr. pp. 43-44). The last act of molestation occurred sometime between 2010 and 2012. At the time, R.P.'s family had moved into a bigger apartment in a two-story building that was still in the same apartment complex. Around that time, R.P. was about nine or ten years old and while babysitting R.P., Chadwick put his hand inside R.P.'s pants and he proceeded to touch R.P.'s penis, "skin to skin, like he did before." (Tr. p. 49). The record shows that Chadwick stopped babysitting R.P. when he turned eleven years old. Because R.P. "was taught by a lot of people that snitching was uncalled for," he did not disclose the molestations to anyone since he thought he would be labeled as "the bad person for snitching." (Tr. p. 48).

[5] On January 1, 2015, R.P. revealed to his close friend, C.H.-K., that he had been molested when he was younger; however, R.P. did not disclose the name of his abuser, and he requested C.H.-K to keep that information a secret. A couple of days after learning about the molestation, C.H.-K disclosed that information to

her mother when she received pictures from R.P. showing that he had cut his arm and wrist. At the time, R.P. was living with his aunt and uncle, and at around 11:00 p.m. that same day, C.H.-K and her mother visited R.P.'s home. According to R.P., he thought that the visit was warranted by the pictures he had sent C.H.-K. As the adults were conversing in the kitchen, R.P. and C. H.-K. were in the foyer talking, and R.P. disclosed to C.H.-K. that it was Chadwick who molested him. Immediately thereafter, C.H.-K. went into the kitchen and she conveyed that information to the adults. R.P.'s aunt and uncle showed R.P. a photograph of Chadwick from social media, and R.P. confirmed Chadwick's identity. Shortly thereafter, R.P.'s aunt and uncle divulged that information to R.P.'s parents and the police were contacted.

[6] On September 2, 2015, the State filed an Information, charging Chadwick with Count I, child molesting, a Class A felony; Count II, attempted child molesting, a Class A felony; and, Count III, child molesting, a Class C felony. A jury trial was held on March 7, 2016, and at the close of the evidence, the jury found Chadwick guilty as charged. On May 6, 2016, the trial court sentenced Chadwick to executed concurrent sentences of thirty-five years each on Counts I and II; and five years on Count III in the Indiana Department of Correction.

[7] Chadwick now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[8] Chadwick argues that the evidence is insufficient to sustain his convictions. When reviewing the sufficiency of evidence to support a conviction, we

consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), *trans. denied*. It is the role of the trier-of-fact to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. "To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling." *Id*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. We note that it is well settled that the uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction for child molesting. *Morrison v. State*, 462 N.E.2d 78, 79 (Ind. 1984).

[9] Chadwick was convicted of one Count of Class A felony child molesting, one Count of Class A felony attempted child molesting, and one Count of Class C felony child molesting. In Count I, the State charged Chadwick under Indiana Code section 35-42-4-3, which provides, in pertinent part:

> (a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:

> (1) it is committed by a person at least twenty-one (21) years of age[.]

[10]     Deviate sexual conduct is defined, in part, as, "an act involving (1) a sex organ of one person and the mouth or anus of another person." I.C.§ 35-41-1-9. Here, Count I alleged that Chadwick, a person of at least twenty-one years of age, did perform or submit to deviate sexual conduct with R.P. The record shows that Chadwick, who was thirty-two years old, molested R.P. who was seven years old at the time. At Chadwick's trial, R.P. testified that when his family returned to Indianapolis from South Carolina, he was about seven years old, and Chadwick walked into his bedroom while he was watching TV. R.P. stated that Chadwick sat next to him in bed, put his hand inside his pants, and then rubbed his thigh and penis. R.P. further stated that Chadwick put his mouth on his penis and his "head was moving." (Tr. p. 44). While this was happening, R.P. tried to push himself away, but he felt paralyzed and "shut down." (Tr. p. 44). Here, we find that the evidence was sufficient beyond a reasonable doubt that Chadwick performed deviate sexual conduct with R.P.

[11]     With respect to Count II, Class A felony child molesting, is defined as twenty-one-year-old person who with a child under fourteen years of age performs or submits to sexual intercourse or deviate sexual conduct. I.C. § 35-42-4-3(a)(1). Attempt is defined at Indiana Code section 35-41-5-1(a), which states that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Therefore, to be guilty of Class A felony attempted child molesting, the State must have established beyond a reasonable doubt that Chadwick took a substantial step toward

performing or submitting to deviate sexual conduct with R.P. At Chadwick's jury trial, R.P. testified that on one occasion, Chadwick "put his hand down my pants and touch[ed] my penis, skin to skin, like he did before." (Tr. p. 49). The reasonable inference to be drawn from Chadwick's actions was that he was attempting to perform deviate sexual conduct with R.P. Accordingly, we conclude that the State provided sufficient evidence to sustain Chadwick's conviction for the Class A felony attempted child-molesting offense.

[12] Lastly, as for Count III, Class C felony child molesting, Indiana Code section 35-42-4-3(b), provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." Mere touching alone is insufficient to constitute the crime of child molesting. *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*. The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id*. The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual consequence to which such conduct usually points. *Id*. Here, R.P. testified that on another occasion, Chadwick came into his bedroom and sat next to him on the bed, pulled down his pants and touched his penis with his hands and "was moving them." (Tr. p. 41). R.P. stated that Chadwick stopped touching his penis after he repeatedly pushed him away. Based on the foregoing, we conclude that the

State provided sufficient evidence to sustain Chadwick's Class C felony child-molesting conviction.

[13] Chadwick also argues that R.P.'s testimony supporting his three molestation convictions was incredibly dubious. The "incredible dubiosity rule" provides that "a court may 'impinge on the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Govan v. State*, 913 N.E.2d 237, 243 n. 6 (Ind. Ct. App. 2009) (quoting *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002)), *trans. denied*. Application of this rule is rare, and "'[T]he standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.'" *Hampton v. State*, 921 N.E.2d 27, 29 (Ind.Ct.App.2010) (quoting *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007)), *trans. denied*. The rule applies only when a witness contradicts herself or himself in a single statement or while testifying, and does not apply to conflicts between multiple statements. *Manuel v. State*, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," or where the witness was so equivocal about the act charged that his uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Watkins v. State*, 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in relevant part*, 575 N.E.2d 624 (Ind. 1991).

[14]   In support of his claim, Chadwick states that several aspects of R.P.'s testimony are incredibly dubious. Specifically, Chadwick claims that R.P. failed to disclose his name even though R.P. knew his name; there was no evidence of DCS interviewing R.P.; and R.P.'s abuse allegations were made merely to seek attention. Unfortunately, we find that none of these aspects make R.P.'s testimony incredibly dubious. R.P. testified at trial to the three instances that Chadwick molested him, and he also explained that the reason he did not disclose the abuse was because he was scared of being labeled as "the bad person for snitching." (Tr. p. 48). Given the clarity and consistency with R.P.'s testimony, we do not find it to be inherently improbable or incredibly dubious. Moreover, the jury had the opportunity to hear R.P.'s testimony and to determine his credibility. Accordingly, we decline Chadwick's invitation to impinge on the province of the jury and reassess that credibility. For all of these reasons, we conclude that the State presented evidence sufficient to support Chadwick's convictions for child molestation.

## CONCLUSION

[15]   Based on the foregoing, we conclude that there was sufficient evidence to support Chadwick's convictions for child molesting.

[16]   Affirmed.

[17]   Crone, J. and Altice, J. concur