## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 13 2017, 5:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clyde Kissel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 13, 2017

Court of Appeals Cause No.
20A05-1606-CR-1462

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No. 20D03-1307-FA-37

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Clyde Kissel (Kissel), appeals his conviction for four Counts of attempted child molesting, Class A felonies, Ind. Code §§ 35-42-4-3(a)(1); -41-5-1 (2005); and two Counts of child molesting, Class C felonies, I.C. § 35-42-4-3(b) (2005).

We affirm.

# ISSUES

Kissel presents two issue on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion in denying Kissel's motion to sever; and

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to support Kissel's convictions.

# FACTS AND PROCEDURAL HISTORY

S.R., born in 1995, and R.R., born in 1997, live with their mother (Mother), father, and two brothers in Edwardsburg, Michigan. Kissel is father to Mother and is, therefore, S.R.'s and R.R.'s maternal grandfather. Kissel and his wife (Grandmother) lived in a 3,800 square-foot house by the St. Joseph river, in Elkhart, Indiana.

Almost every major holiday, Mother's four children, including S.R. and R.R., would spend time at Kissel's house. In 2005, Kissel lost his job, and Grandmother traveled a lot for work. Due to Grandmother's prolonged

absence, Kissel expressed to Mother that he could "handle one, maybe [] two," but not all four children at the same time for visits. (Transcript p. 125). In 2005, ten-year-old S.R. was visiting Kissel at his home. While sitting on the couch, Kissel used a back massager on S.R.'s back, and then turned S.R. around and rolled the back massager on her chest, and then down to S.R.'s pants zipper. At that point, Kissel paused and told S.R. that "it would feel" better if she took off her pants. (Tr. p. 208). S.R. did not remove her pants; however, Kissel continued to rub the massager against S.R.'s vagina, over her pants. S.R. voiced to Kissel that she needed to use the bathroom. When S.R. returned, she did not sit on the couch; instead, she sat on the floor and told Kissel that she "just wanted to pet the dog and watch TV." (Tr. p. 209). On another occasion, still in the same year, Kissel picked up S.R. from her home so that she could spend a night at his house. When Kissel and S.R. got to the house, Kissel asked S.R. if she wanted to take a shower. S.R. thought that she would be showering alone, but Kissel followed her and stated that they could both shower together. In the shower, Kissel washed S.R.'s entire body. At that moment, Kissel instructed S.R. to do the same to him. Avoiding Kissel's penis area, S.R. washed Kissel's stomach, arms, and legs. Kissel instructed S.R. to also wash his penis, and so she did. After the shower, Kissel informed S.R. that she could sleep in his bed since Grandmother was out of town that night. Also, Kissel expressed to S.R. that she was not required to sleep with her pants since he did not sleep with his either. When they got in bed, Kissel pulled S.R. "on top of his stomach," and rubbed her entire body with his hands. (Tr. p. 216). Kissel thereafter reached down for his "penis and started rubbing it" against

S.R.'s vagina, causing her pain. (Tr. p. 216). On another occasion, Kissel pulled down S.R.'s pants to her knees, and using a back massager, he rubbed S.R.'s "clitoris" over her underwear. (Tr. p. 208).

[6] In 2005, R.R. was about eight years old. While visiting Kissel, she and Kissel went for a swim in the pool on Kissel's property. Later in the day, Grandmother requested R.R. to accompany her to the store. However, Kissel convinced R.R. to remain behind by stating, "[N]o, let's just hang around the house, just me and you, and [Grandmother] can go to the store." (Tr. p. 169). When Grandmother left, Kissel told R.R. that they needed to wash off the chlorine from their bodies. R.R. accompanied Kissel to the master bedroom bathroom. Because Kissel did not want Grandmother knowing that he and R.R. had taken a shower, he put up R.R.'s hair, which had been dry following her earlier swim. In the shower, both took turns washing each other. Thereafter, Kissel took R.R. into his bedroom, made her lie on the bed, and informed R.R. that he wanted to show her something. Using a massager that "vibrated," Kissel brushed it against R.R.'s vagina. (Tr. p. 176). When Kissel heard the garage door open, thereby indicating that Grandmother was back from the store, he stopped and told R.R. to hurry up and get dressed. Kissel instructed R.R. to keep the events of that afternoon secret.

[7] On January 17, 2013, after Mother watched a show on the television about a girl who got drunk and was raped by several men, Mother decided to talk to her now-teenage daughters, S.R. and R.R. When Mother asked S.R. what she would do in a similar situation, S.R. stated that she would fight off the men.

Mother disputed S.R.'s response and stated that S.R. would not know what do if she was confronted with a similar situation. Mother's comment upset S.R. and both started arguing. While arguing, Mother told S.R., "[D]on't just sit there and act like you have been in this situation before because you don't know anything about it." (Tr. p. 178). At that point, S.R. "freaked out and started screaming at" Mother, and she stated, "[D]on't tell me this has never happened to me because it has, and [Kissel] is the one that did it to me." (Tr. p. 178). S.R. added, "I know you heard me . . . . [Kissel] raped me . . . and it happened to" R.R. as well. (Tr. p. 179).

[8] On July 16, 2013, the State filed an Information, charging Kissel with Counts I-III, Class A felony child molesting with respect to S.R.; Counts IV-V, Class C felony child molesting with respect to R.R.; Count VI, Class A felony child molesting with respect to R.R.; Count VII, Class A felony child molesting with respect to A.B.—Kissel's other granddaughter (a daughter to Mother's half-sister); and Count VIII, Class B felony incest with respect to A.B. On May 21, 2015, Kissel filed a motion to sever the Counts and sought separate trials for all three victims. On July 1, 2015, the trial court held a hearing on the motion to sever and took the matter under advisement. On August 18, 2015, the trial court issued an order denying Kissel's severance motion.

[9] On October 9, 2015, the State filed a motion for leave to amend the charging Information, which was granted. In the amended charging Information, the State dismissed the offenses relating to A.B.—*i.e.*, Count VII, child molesting, a Class A felony, and Count VIII, incest, a Class B felony. In addition, the State

amended the offenses relating to S.R. —*i.e.*, Counts I-III, from Class A felonies for child molesting, to Class A felonies, attempted child molesting.

[10] A three-day jury trial was held from February 15 through February 17, 2016, on the amended charging Information. At the close of the State's case, upon the trial court's approval, the State orally amended Count VI, a Class A felony child molesting charge relating to R.R., to a Class A felony attempted child molesting. At the end of trial, the jury found Kissel guilty of all charges–*i.e.*, four Class A felonies for attempted child molesting (three of which related to S.R. and one to R.R.); and two Class C felonies for child molesting on R.R. On May 26, 2016, the trial court conducted Kissel's sentencing hearing. At the close of the evidence, the trial court imposed concurrent forty-year sentences on the three Class A felonies relating to S.R. Additionally, the trial court sentenced Kissel to a consecutive forty-year sentence on the remaining Class A felony offense relating to R.R. Lastly, the trial court imposed concurrent six-year sentences on the two Class C felonies for child molesting with respect to R.R. Kissel's aggregate sentence is eighty years.

[11] Kissel now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Motion to Sever*

[12] Kissel first argues that the trial court abused its discretion in denying his motion to sever. Specifically, Kissel contends that the charges involving S.R. should have been severed from the charges involving R.R.

[13] Under the controlling statute, two or more offenses may properly be joined in the same information if the offenses: "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." I.C. § 35-34-1-9(a). Indiana Code section 35-34-1-11(a) provides that a defendant has "an absolute right to severance of offenses which have been joined 'solely on the ground that they are of the same or similar character.'" *Davidson v. State*, 558 N.E.2d 1077, 1083 (Ind. 1990). Thus, where causes are joined solely under subsection 9(a)(1), *i.e.*, same or similar character, the trial court has no discretion to deny a severance motion, and we review its decision *de novo*. *Pierce v. State,* 29 N.E.3d 1258, 1265 (Ind. 2015). However, if the offenses have been joined under subsection 9(a)(2) because the defendant's underlying acts are connected together, we review the trial court's ruling for an abuse of discretion. *Id*.

[14] Notably, our statutes require a defendant to comply with certain procedural steps to preserve error from the denial of a pre-trial motion for severance:

> (b) If a defendant's pretrial motion for severance of offenses or motion for a separate trial is overruled, the motion may be renewed on the same grounds before or at the close of all the evidence during trial. The right to severance of offenses or separate trial is waived by failure to renew the motion.

I.C. § 35-34-1-12. Thus, where a defendant moves for severance before trial, is denied severance, and fails to renew that motion by the close of evidence at trial, he may not seek appeal from the denial of that motion. *Rouster v. State*,

600 N.E.2d 1342, 1346 (Ind. 1992). Here, Kissel did not renew his pre-trial severance motion during trial, and the State claims that he has waived this issue for appeal. *See* I.C. § 35-34-1-12(b). We agree with the State that by failing to renew his severance motion at the close of the evidence, Kissel waives this issue for appeal. Waiver notwithstanding, we will address Kissel's claim on the merits.

[15]  On appeal, Kissel does not advance that he was entitled to severance as a matter of right because his offenses were not of the same or similar character; rather, Kissel contends that severance was appropriate to promote a fair determination of his guilt or innocence for each of the charged offenses. *See* I.C. § 35-34-1-11(a). As such, Kissel argues that the trial court abused its discretion in denying his motion to sever.

[16]  As noted, if the offenses have been joined under subsection 9(a)(2) because the defendant's underlying acts are connected together, we review the trial court's ruling for an abuse of discretion. *Pierce,* 29 N.E.3d at 1265. Under the abuse of discretion standard, the trial court must determine whether the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense. *Booker v. State*, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003), *trans. denied*. In making such a determination, Indiana Code Section 35-34-1-11(a) mandates the trial court to consider: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[17] The number of charges in this case is not confusingly large. The State had initially charged Kissel with eight Counts—five Class A felonies for child molesting offenses (three related to S.R., one to R.R., and the other to A.B.); two Class C felonies for child molesting offenses relating to R.R.; and one Class B felony incest charge relating to A.B. On October 9, 2015, the State dismissed the Counts pertaining to A.B. At his jury trial, Kissel was only tried for six charges—*i.e.*, four Class A felonies for attempted child molesting (three of which related to S.R. and one to R.R.); and two Class C felonies for child molesting on R.R. Furthermore, the evidence presented at trial was not overtly complex. S.R. testified that Kissel used a massager to rub her vagina, once over her pants and another time over her underwear. S.R. also testified that the third time Kissel molested her, Kissel pulled her on top of him and rubbed his penis against her vagina and he caused her pain. Turning to the offenses against R.R., Counts IV and V, R.R. testified to an incident in the shower where Kissel washed her body, and under Kissel's instruction, she bathed his body. R.R. testified that after showering, Kissel made her lie on the bed and then he massaged her vagina with a vibrating machine.

[18] We find that the girls' testimony was easy to distinguish and separately described each girl's independent experiences. *See Philson v. State,* 899 N.E.2d 14, 17-18 (Ind. Ct. App. 2008) (finding no abuse of discretion in the trial court's refusal to sever five charges covering two victims as the evidence regarding each victim was easily distinguishable and largely based upon each victim's testimony). Finally, it is reasonable to conclude that, in light of the

uncomplicated nature of the evidence, there was insignificant risk of juror confusion or any doubt that the jurors would not have been able to distinguish the evidence and apply the law intelligently to each offense. More importantly, the jury instructions clearly defined each offense, and the trial court instructed the jury to consider each Count independently based on the law and the evidence relating to each Count. Under the foregoing circumstances, we hold that the trial court did not abuse its discretion by denying Kissel's severance motion.

## II. *Sufficiency of the Evidence*

[19] Kissel also contends that the evidence was insufficient to convict him of the child molesting offenses. "Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of witnesses, and respects the jury's exclusive province to weigh conflicting evidence. *Montgomery v. State*, 878 N.E.2d 262, 265 (Ind. Ct. App. 2007) (quoting *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)). We consider only probative evidence and reasonable inferences supporting the verdict. *Id*. We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

[20] In the instant case, Kissel was charged with four Class A felonies for attempted child molesting, and two Class C felonies for child molesting. A conviction for child molesting as a Class A felony requires the State to prove, in pertinent part, that a person at least twenty-one years of age performed sexual intercourse or

deviate sexual conduct on a child who is under fourteen years of age. I.C. § 35-42-4-3(a)(1) (2005). Deviate sexual conduct means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35-31.5-2-94 (2005). Attempt is defined at Indiana Code section 35-41-5-1(a), which states that "[a] person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Therefore, to be guilty of Class A felony attempted child molesting as charged in Counts I-III and VI, the State must have established beyond a reasonable doubt that Kissel took a substantial step toward performing sexual intercourse or deviate sexual conduct with S.R. and R.R.

[21]    At the time Kissel committed the offenses against S.R., she was about ten years old, and Kissel was sixty-three years old. S.R. testified that the first time Kissel molested her, Kissel used a back massager to massage her vagina over her pants. In another massaging incident, S.R. testified that Kissel pulled her pants down to her knees and used a massager to rub her "clitoris" over her underwear. (Tr. p. 208). Kissel's third molesting act against S.R. occurred when he picked up S.R. from her home so that she could spend the night alone at his house. After taking a shower with S.R., Kissel informed S.R. that she could spend the night in his bed since Grandmother was out of town. When they both got in bed, Kissel pulled S.R. "on top of his stomach," and then he rubbed her entire body with his hands. (Tr. p. 216). Kissel afterwards reached

down for his penis and used it to rub S.R.'s vagina, thereby causing her pain. Although penetration did not occur, Kissel's conduct with regard to the first two acts of abuse against S.R. points to an inference that he was attempting to perform deviate sexual conduct, and the last act against S.R. was an attempt by Kissel to penetrate S.R.'s vagina. Turning to the last Class A felony attempted child molesting offense against R.R., the record shows that in 2005, R.R. was about eight years old, and Kissel was sixty-three years old. Kissel took R.R. into his bedroom and made her lie on the bed. Kissel then used a massager to rub R.R.'s vagina. Here, the reasonable inference to be drawn from Kissel's actions was that he was attempting to perform deviate sexual conduct with R.R.

[22] Lastly, to establish the offense of child molesting as a Class C felony in this case, the State must have proved beyond a reasonable doubt that (1) Kissel (2) with R.R., a child under fourteen years of age, (3) performed or submitted to fondling or touching of R.R. (4) with the intent to arouse or satisfy the sexual desires of either R.R. or Kissel. *See* I.C. § 35-42-4-3(b). Mere touching alone is insufficient to constitute the crime of child molesting. *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*. The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id*. The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual consequence to which such conduct usually points. *Id*. The evidence favorable to the verdict shows that Kissel wanted R.R. to remain behind instead of going with Grandmother to the

store. Once Grandmother had left and they were home alone, Kissel told R.R. they needed to wash off the chlorine. Because Kissel did not want Grandmother to know that he and R.R. had taken a shower together, he tied back R.R.'s hair in order to avoid getting it wet. In the shower, Kissel put soap on his hands and washed R.R.'s body. Kissel instructed R.R. do the same to him. Here, it could be inferred that Kissel's concealed act of showering with R.R. while Grandmother had left to go to the store, was not utterly innocent and that he intended to arouse or satisfy his sexual desires. Based on the foregoing, we conclude that the State provided sufficient evidence beyond a reasonable doubt to support Kissel's Class C felony child molesting convictions.

## CONCLUSION

[23] Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Kissel's motion to sever, and the State presented sufficient evidence beyond a reasonable doubt to support Kissel's convictions.

[24] Affirmed.

[25] Najam, J. and Bradford, J. concur