## Michael DOWDELL, Appellant (Defendant Below),

v.

## STATE of Indiana, Appellee (Plaintiff Below).

### No. 49S00–9703–CR–224.

Supreme Court of Indiana.

Dec. 16, 1999.

Hilary Bowe Oakes, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Michael Dowdell was convicted of two counts of felony murder, one count of attempted murder, one count of robbery, and three counts of criminal confinement. He was sentenced to an aggregate term of 160 years imprisonment. After initiating his direct appeal, he sought and obtained leave to suspend the appeal and pursue postconviction relief in the trial court. Postconviction relief was denied by the trial court and Dowdell now raises four issues in this consolidated appeal: (1) the trial court's exclusion of witnesses, (2) ineffective assistance of counsel, (3) the giving of fundamentally erroneous jury instructions, and (4) the trial court's failure to articulate mitigating circumstances and use of improper aggravating circumstances in its sentencing statement. Because the postconviction court's findings are insufficient to allow appellate review, we remand this case to the postconviction court for additional findings. In the event the postconviction court denies relief, Dowdell is entitled to resentencing on this record.

## Factual and Procedural Background

Kenneth Pack and Kimberly Renee Saxton had their first date on the evening of August 22, 1995. The two ate take-out food at Pack's house and then watched television. Pack's roommate, Lawrence Moore, was also at home but remained in his bedroom. At about 8:30 p.m., Pack heard a knock at the door and answered it. He saw Dowdell, whom he had known for nearly twenty years, on the front step. When Pack opened the door, another man stepped out from behind Dowdell and put a gun to Pack's head. The armed stranger led Pack to the kitchen where he then ordered him to call for whomever was in the house. Pack complied, and Moore and Saxton came to the kitchen. The stranger ordered Saxton to tie up Pack and Moore, which she did. The stranger then held the three at gunpoint while Dowdell ransacked the house. Dowdell later returned to the kitchen and spoke to the stranger who responded by asking where the money was and firing a bullet into the ceiling. Pack told the robbers that he had $200 tucked under a sofa cushion. Dowdell returned and, according to Pack's testimony, "whispered something to [the stranger] and then the [stranger] just starting shooting." Saxton and Moore both died of the gunshot wounds. Pack survived.

Dowdell was arrested and charged with two counts of felony murder, one count of attempted murder, one count of robbery, and three counts of criminal confinement. The State's primary witness at trial was Pack. In addition, the State called Anthony Ross who testified that, while he was waiting in a holding cell to appear in court in August of 1995, Dowdell told him that he and another man had gone to Pack's house and shot the people inside because Dowdell and a friend "had got beat out [of] some drugs." A jury found Dowdell guilty on all counts and the trial court sentenced him to an aggregate term of 160 years imprisonment. Dowdell initiated a direct appeal of his convictions but then sought leave to pursue postconviction relief in the trial court. Leave was granted, and Dowdell filed a petition for postconviction relief in the trial court, which was denied. The direct appeal was then reinstated and consolidated with the appeal from the denial of postconviction relief.

## I. Exclusion of Witnesses

A member of Dowdell's family hired Randall Cable to represent Dowdell. Cable entered his appearance on August 29, 1995. On March 1, 1996, Cable filed a motion for continuance that stated he was "still engaged in Discovery." On April 29, the State filed a motion to compel, requesting that Cable disclose the names of witnesses he intended to call at trial. The trial court granted the motion, ordered Cable to file a response within five days and further noted that the "sanction of exclusion of said evidence may be granted if this order is not complied with." Cable did not file a response but rather, on May 9, filed a "Motion for Continuance and Extension of Time to File Discovery Response." The motion asserted that Cable had "experienced difficulty in getting his client and family to supply requested discovery information sought by the State," but stated that he had received a call the previous afternoon from Dowdell's brother giving him "four names with addresses and six names without other identifiers." The trial was continued to July 8. Cable filed another motion for a continuance on July 5. This motion asserted that counsel had met with Dowdell's brother on June 28 and that Dowdell's brother was to return with additional information. According to the motion, the State agreed to a continuance of the trial to August 5 and to an extension to comply with discovery until July 17. The trial court granted the motion.

On August 5, the morning of trial, Cable filed a list of witnesses containing ten names, four of which had addresses. The trial court refused to permit the addition of these witnesses, observing that the list was filed the morning of trial and therefore did not comply with the court's discovery rules and also violated the order to

compel. Dowdell was not permitted to call the belatedly listed witnesses and did not testify himself. The jury was unable to reach a verdict and a mistrial was declared. The case was scheduled for trial three weeks later but was then continued to October 21. Cable filed no written motion asking the trial court to reconsider the exclusion of witnesses but did orally request that the trial court reconsider the exclusion on the morning of the second trial. The oral motion was denied. Dowdell contends that the trial court's ruling on the exclusion of witnesses was error and that Cable rendered ineffective assistance by not filing a witness list sooner or seeking reconsideration of the denial.

### A. *Exclusion by the Trial Court*

◼ Dowdell has waived any error in the exclusion of witnesses. It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony. *See Herrera v. State,* 679 N.E.2d 1322, 1325 (Ind.1997) (citing *Wiseheart v. State,* 491 N.E.2d 985, 991 (Ind.1986)). An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded. *See id.* Dowdell's failure to make an offer of proof waives any error in the exclusion of these witnesses.

### B. *Ineffective Assistance of Counsel*

◼ To establish a violation of the Sixth Amendment right to effective assistance of counsel, Dowdell must show that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. More recently, the Supreme Court of the

United States held that prejudice resulting from ineffective assistance is not established unless the error rendered the result of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

◼ Dowdell's ineffective assistance claim was raised in his petition for postconviction relief. Dowdell bore the burden in the postconviction court of establishing the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues Dowdell must meet the higher standard of convincing this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court. *Harrison v. State,* 707 N.E.2d 767, 773 (Ind.1999), *petition for cert. filed* (U.S. Aug. 16, 1999) (No. 99–5793) (citing *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995)). We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the postconviction court. *Id.* at 774.

Dowdell testified at the postconviction hearing and also called Cable and four other witnesses. When asked if Dowdell ever provided him with names of witnesses that could verify his alibi, Cable responded that he did not recall. In response to other questions Cable stated that he "was not given a full list or a complete list of – as to a list to ever timely file anything" and "didn't feel [he] had enough information to adequately [complete] the list." Cable testified that he "was somewhat cognizant" of the stringent discovery rules of the trial court. Nevertheless, he chose not to file a witness list based on his limited information. Finally, Cable testified that he did not recall what attempts were made to contact the witnesses whose names and/or addresses he was given. The postconviction court entered findings of fact and conclusions of law denying relief be-

cause Dowdell had not established his claim of ineffective assistance of counsel.

### 1. *Deficient Performance*

■ The findings were based largely on the deficient performance prong of *Strickland*. The postconviction court found in part that

the actions or inactions characterized by the petitioner as deficient performance were, instead, the product of trial strategy or tactics.... Despite testimony [from] friends and/or relatives of the petitioner that counsel was provided information regarding identity of potential defense witnesses, the Court concludes that neither the Court's record nor counsel's own testimony supports such claims.

The State points to *Brown v. State*, 691 N.E.2d 438, 447 (Ind.1998), in which this Court observed that "[a] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." (internal citation omitted). It contends that Cable's performance was not deficient because he did not have enough information to file a witness list. We disagree.

The motion for continuance filed on May 9, 1996 stated that Cable had been given the names of ten potential witnesses and addresses for four of them. Cable could have filed a witness list at that time, but did not. Moreover, it appears that Cable did nothing to find additional information about these witnesses. In the face of an order to compel that explicitly mentioned exclusion as a potential sanction, Cable filed no witness list and apparently did no independent investigation. Rather, he sought a continuance and then, on the morning of trial, filed a belated witness list. In addition, after the first trial ended in a hung jury, Cable did not file a written request for reconsideration of the trial court's ruling on exclusion but rather raised the issue orally on the morning of the second trial. Finally, Cable made no offer of proof to preserve any error in the trial court's exclusion of the witnesses. Under these circumstances, we conclude that the evidence leads to the conclusion that Cable's actions were not a product of trial strategy or tactics but rather were deficient performance. *See Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir.1994) (finding deficient performance because defense counsel "knew of three alibi witnesses before trial and should have made some effort to contact or interview these people in furtherance of [the] defense"); *cf. Herrera*, 679 N.E.2d at 1326 (finding no deficient performance for failing to file a list of supplemental witnesses because defendant did not show that the list could have been produced earlier).

### 2. *Prejudice*

■ The postconviction rules explicitly require trial courts to make "specific findings of fact and conclusions of law on all issues presented...." Ind. Post–Conviction Rule 1(6). Although the postconviction court entered findings, the findings focused on the deficient performance prong of *Strickland*. As explained above, that determination was clearly erroneous. What remains is the following language from footnote 2 of the postconviction court's findings: "The Court notes that despite [the ruling on the exclusion of witnesses], the jury in the first trial was unable to come to a decision. This fact suggests that the ruling was not crippling, and that counsel's inability to obtain a contrary ruling was not prejudicial to petitioner's cause." To the extent that this is a finding as to the prejudice prong of *Strickland*, it, too, is clearly erroneous. The fact that the first trial ended in a hung jury suggests that, at least in the mind of some jurors, there was a reasonable doubt surrounding Dowdell's guilt. The addition of alibi witnesses may very well have swayed other jurors. One cannot conclude from a prior hung jury that as a general proposition there is no reasonable possibil-

ity that newly presented evidence would affect the result.

■ Nevertheless, an appellate court may affirm a trial court's judgment on any theory supported by the evidence. *See, e.g., Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997) Although the State does not specifically invoke this doctrine, it does make an extensive argument directed to establishing lack of prejudice. Of the witnesses who testified at the postconviction hearing, only Candis Johnson testified that she was with Dowdell the entire evening of the crimes. Dowdell's sister testified that she saw Dowdell early that evening and then called and spoke to him on the phone twice, at around 9:15 p.m. and 10:30 p.m.[1] The State contends that Dowdell has not established prejudice because Pack

> repeatedly and unequivocally identified Dowdell as one of his assailants.... On the other hand, the testimony presented at [Dowdell's] postconviction hearing does not unequivocally establish an alibi defense because Johnson, the only witness whose testimony did account for Dowdell's presence for the entire evening, is Dowdell's girlfriend and the mother of his child. Consequently, the jury would be aware of her bias and likely view her testimony with skepticism. Given the strong nature of Pack's testimony against the relatively weak "alibi" evidence, it is unlikely that this evidence would have impacted the jury's verdict.

■ Although the State presents one plausible view of the evidence it chooses to emphasize, the postconviction court made no such finding. As this Court recently observed in *State v. McCraney*, 719 N.E.2d 1187, 1191 (Ind.1999), "[w]hether a witness' testimony at a postconviction hearing is worthy of credit is a factual determination to be made by the trial judge who has the opportunity to see and hear the witness testify." The postconviction court's findings in this case shed no light on whether or not it shared the State's view of Dowdell's alibi witnesses or whether there was a reasonable probability that their testimony would have led to an acquittal in light of the other evidence at trial.

■ The principal purpose of findings of fact "is to have the record show the basis of the trial court's decision so that on review the appellate court may more readily understand the former's view of the controversy." *Love v. State*, 257 Ind. 57, 59, 272 N.E.2d 456, 458 (1971) (quoting 3 William F. Harvey, *Indiana Practice* 426 (1970)). Findings of fact must be "sufficient to enable this Court to dispose of the issues upon appeal." *Taylor v. State*, 472 N.E.2d 891, 892 (Ind.1985). Here, the footnote relating to prejudice in the postconviction court's findings is insufficient to allow appellate review of prejudice under *Strickland*. We remand this case to the postconviction court to enter findings of fact and conclusions of law on that issue.

## II.  Jury Instructions

Dowdell next contends that four of the trial court's instructions were erroneous. He concedes that trial counsel did not object to any of these instructions and therefore any claim of error is generally waived. However, he seeks to avoid procedural default by couching his argument in terms of fundamental error.

Counts one and two of the information charged Dowdell with the felony murder of Moore and Saxton, i.e., killing while committing or attempting to commit the crime of robbery. Preliminary instruction 8 and final instruction 36 advised the jury that

---

1.  Dowdell's neighbor, Steven Pinner, also testified that he saw Dowdell that evening and heard Dowdell and his girlfriend arguing later in the evening. However, Pinner stated that he did not come forward until after Dowdell was convicted. Dowdell points to nothing that suggests Cable would have had any reason to identify Pinner as a potential witness. Accordingly, he has not met his burden of establishing deficient performance as to Pinner's testimony.

"[t]he crime of felony murder is defined by statute as follows: a person who knowingly or intentionally kills another human being, or kills another human being while committing or attempting to commit . . . robbery . . . commits felony murder." These instructions continued by listing the elements necessary for a conviction for felony murder: "The defendant on or about August 22, 1995, 1. killed 2. [Moore/Saxton] while committing or attempting to commit the crime of robbery which is to (a) knowingly (b) take from the person or presence of [Moore/Saxton] property, that is: United State[s] currency (c) by putting [Moore/Saxton] in fear or by using or threatening the use of force on [Moore/Saxton]." The instructions concluded that if the State did not prove each of these elements beyond a reasonable doubt the jury should find Dowdell "not guilty of felony murder as charged in . . . the Amended Information." Dowdell contends that these instructions were erroneous because they allowed the jury to convict him of felony murder based on proof of a knowing or intentional killing.

▇▇▇ The instruction listed only the elements of felony murder and concluded that the jury should return a verdict of not guilty if any of these elements was not proven. Although the trial court should not have included the superfluous definition of knowing/intentional murder as part of its instruction on felony murder, its inclusion does not constitute fundamental error. *See Wallace v. State*, 553 N.E.2d 456, 465–66 (Ind.1990) ("The mention of intentional murder was merely in the defi-

nitional part of the statute read to the jury and they were not given the option of considering either [intentional murder or felony murder] in reaching a verdict.").[2]

▇▇▇ Dowdell also argues that final instructions 24 and 52 were fundamentally erroneous. Instruction 24 informed the jury that the defendant's failure to testify should not be commented upon, referred to, or in any manner considered in determining "the guilt or innocence of the defendant," and instruction 52 informed the jury that in order to return a verdict of "guilt or innocence you must all agree." These instructions are near verbatim recitations of two pattern instructions. *See* 1 *Indiana Pattern Jury Instructions (Criminal)* 13.21 (Supp.1995) & 13.23 (2d ed.1991). Dowdell contends that "[s]tating that the possible verdicts were guilty or innocent implied a burden [on] Dowdell to prove his innocence or be found guilty . . . ." We disagree.

As used in these instructions, the term "innocence" is merely another way of saying "not guilty." Moreover, these instructions dealt with Dowdell's decision not to testify and jury deliberations, subjects unrelated to the State's burden of proving the material elements of each charge beyond a reasonable doubt. The State's burden to prove all the material elements of each offense beyond a reasonable doubt was made clear in several other instructions. The use of the word innocence[3] implied no burden on Dowdell, and these instructions were not erroneous, let alone fundamentally erroneous.[4]

2. We also addressed a somewhat similar claim in *Fleenor v. State*, 622 N.E.2d 140 (Ind.1993), in which the defendant was charged with two counts of murder but a preliminary instruction included the felony murder provision. Because the final instruction did not include the felony murder language and "explicitly defined the elements of the offense that were required to be proven as only those for non-felony murder, no error in the jury's determination of guilt could have resulted." *Id.* at 148. Although both the preliminary and final instructions here included the knowing and intentional murder

language, both also listed only the elements of felony murder and instructed the jury that it could convict only if the State proved "each of these elements beyond a reasonable doubt."

3. Dowdell does not contend that the trial court erred in giving the pattern instruction on the presumption of innocence, which also uses the word innocence.

4. We also reject Dowdell's suggestion that trial counsel was ineffective for failing to object or tender alternatives to these four in-

## III. Sentencing

■ As a final point Dowdell argues that his case must be remanded for a new sentencing because the trial court failed to mention and balance any mitigating circumstances and improperly found aggravating circumstances. As mitigation Dowdell points to his lack of a prior criminal history and the hardship his incarceration would impose on his dependent. The allegation that the trial court failed to find a mitigating circumstance requires Dowdell to establish that the mitigating evidence is both significant and clearly supported by the record. *See Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999). The General Assembly has recognized the significance of a defendant's lack of criminal history by specifically listing it in the sentencing statute. *See* Ind.Code § 35–38–1–7.1(c)(6) (1998). Moreover, the State concedes that "[i]t appears that the trial court ignored a mitigating factor apparent on the face of the record: Dowdell's lack of criminal history." Dowdell was twenty-six at the time of sentencing and the presentence report listed his prior history of criminal activity as only an arrest for misdemeanor battery that was dismissed. Because of the trial court's failure to find and balance this significant mitigating circumstance, we remand this case to the trial court for resentencing on this record.

■ We also briefly address Dowdell's other contentions of sentencing error, because they may arise at resentencing. First, he asserts that the trial court failed to find that long-term imprisonment would result in undue hardship to his dependent. *See* Ind.Code § 35–38–1–7.1(c)(10) (1998) ("Imprisonment of the person will result in undue hardship to the person or the dependents of the person."). A suspended

sentence was not possible, as Dowdell faced a minimum sentence of forty-five years incarceration for murder. *See id.* § 35–50–2–3(a) (1998). Moreover, trial counsel did not argue this as a mitigating circumstance at sentencing nor did Dowdell offer any evidence on the point. However, the presentence report stated that Dowdell and Candis Johnson were the parents of one child who was eighteen months old at the time of sentencing. It also stated that Dowdell had not been ordered to pay support for the child. Many persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship. The trial court did not abuse its discretion by failing to find this as a mitigating circumstance. *Cf. Battles v. State*, 688 N.E.2d 1230, 1237 (Ind.1997) ("[T]he difference between the presumptive and enhanced sentence here hardly can be argued to impose much, if any, additional hardship on the child, and we decline to attach any significant weight to this proffered mitigating circumstance.").

As a final point, Dowdell suggests that the trial court improperly found aggravating circumstances. We do not agree. The trial court was entitled to find the nature and circumstances of the offense as an aggravating circumstance, *see, e.g., Thacker v. State*, 709 N.E.2d 3, 10 (Ind. 1999), and was also entitled to find that "the nature of the crime is such that less than an enhanced sentence would depreciate the seriousness of the offense," *see, e.g., Huffman v. State*, 717 N.E.2d 571, 577 (Ind.1999).

## Conclusion

This case is remanded to the postconviction court for findings as to the prejudice

structions. The latter two instructions were not erroneous and counsel cannot be declared ineffective for failing to make an objection that would have been overruled. *See, e.g., Harrison v. State*, 707 N.E.2d 767, 778 (Ind. 1999). Moreover, Dowdell has failed to make any real showing of prejudice from trial counsel's failure to object to the trial court's inclu-

sion of unnecessary language in the felony murder instructions (Instructions 8 and 36). As explained above in text, the instruction listed the elements of felony murder and told the jury that it should find the defendant not guilty if those elements were not proven beyond a reasonable doubt.

prong of Dowdell's ineffective assistance of counsel claim. In the event the postconviction court makes a finding of no prejudice, Dowdell is then entitled to resentencing on this record.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.