## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2017, 5:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael P. Swygart,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 20, 2017

Court of Appeals Case No.
01A02-1704-CR-847

Appeal from the Adams Circuit Court

The Honorable Chad E. Kukelhan, Judge

Trial Court Cause No.
01C01-1512-F4-9

**Bradford, Judge.**

# Case Summary

In March of 2017, a jury found Appellant-Defendant Michael Swygart guilty of committing numerous acts of sexual misconduct on his step-daughter, I.H. Swygart appeals, arguing that (1) the evidence is insufficient to sustain his convictions, (2) the trial court abused its discretion in sentencing him, and (3) his sentence is inappropriate. Because we conclude otherwise, we affirm.

# Facts and Procedural History

When I.H. was born, she suffered from several developmental issues. Swygart was I.H.'s step-father and her primary caregiver. I.H. was never close to, and did not get along with, her mother, so she spent most of her time with Swygart. At all times relevant to this appeal, I.H. lived in a home in Adams County with Swygart, her mother, and her step-brother, M.M.

As a child, I.H. suffered from anxiety which left her scared to be alone, specifically in the shower. Because I.H. feared being alone, Swygart would typically stand in the bathroom while she showered and would leave the bathroom when she finished so that she could get dressed. However, one day when I.H. was thirteen, Swygart failed to leave the bathroom after she had finished in the shower. Swygart told I.H. that he needed to "check something first." Tr. Vol. II, p. 57. When I.H. inquired into what he needed to check, Swygart indicated that he needed to see if she was a virgin. While still in the private confines of the bathroom, Swygart forcibly placed I.H on top of the

washing machine. I.H., who was still naked from her shower, kicked at Swygart and told him to stop. Despite I.H.'s request that he stop, Swygart forcibly grabbed I.H.'s "thighs to pull [her] legs apart," placed his head between I.H.'s legs, and spread her vagina apart with both of his hands. Tr. Vol. II, p. 58. He stared at I.H.'s vagina for several seconds before remarking "okay, you are." Tr. Vol. II, p. 58. Swygart then left the bathroom. I.H. reported the incident to her mother "[r]ight after it happened." Tr. Vol. II, p. 59. I.H.'s mother confronted Swygart who "threw a fit." Tr. Vol. II, p. 59. I.H.'s mother then yelled and cussed at I.H. and forced her to apologize to Swygart.

[4] One morning during the summer of 2015, after I.H. had turned fourteen, I.H. and Swygart were alone in the family home from approximately 3:30 a.m. until approximately 6:00 a.m. I.H., who was in her bedroom watching cartoons, had taken one of her mother's "Klonopins" to help her fall asleep. Tr. Vol. II, p. 63. At some point, Swygart entered I.H.'s bedroom wearing "just his boxers." Tr. Vol. II, p. 65. After I.H. indicated that she was having trouble falling asleep, Swygart suggested that she "take another Klonopin." Tr. Vol. II, p. 65. After a couple of minutes, while I.H. was lying flat on her bed, Swygart "looked at [I.H.] and said let me show you something." Tr. Vol. II, p. 65. He then started rubbing the outside of I.H.'s vagina. Swygart "then moved inside [I.H.'s] pants and started fingering [her]." Tr. Vol. II, p. 66. I.H. subsequently indicated that it hurt when Swygart did so.

[5] Swygart then removed I.H.'s pajama pants and underwear and "started licking [her] vagina." Tr. Vol. II, p. 66. Swygart had positioned his body so that he

was "laying down on the bed" with his body in the "[o]pposite direction" from I.H.'s body. Tr. Vol. II, p. 66. Swygart continued licking I.H.'s vagina for "a couple minutes." Tr. Vol. II, p. 66. I.H. subsequently indicated that it also hurt when Swygart committed this act.

[6] Swygart then "got on [I.H.'s] bed on his knees and inserted his penis a little bit." Tr. Vol. II, p. 67. I.H. felt Swygart's penis "go inside" her. Tr. Vol. II, p. 67. She later described that it seemed that Swygart "put a little bit of [his penis] in before he realized what he was doing" and that Swygart's penis was "inside of [her]" for "[m]aybe a couple seconds." Tr. Vol. II, p. 67. I.H. later indicated that it hurt when Swygart committed this act.

[7] Throughout the encounter, Swygart "kept asking [I.H.] if [she] liked it" and I.H. kept asking him to stop. Tr. Vol. II, p. 67. After removing his penis from inside I.H., Swygart "got up, dressed [I.H.], and grabbed his phone and left [I.H.'s] room." Tr. Vol. II, p. 68. After Swygart left, I.H. "curled up in a ball and … just started crying." Tr. Vol. II, p. 69. At some point, Swygart came back into I.H.'s room and sat at the edge of I.H.'s bed. Swygart grabbed I.H.'s leg and said he was sorry and that he "didn't mean to." Tr. Vol. II, p. 70. I.H. flinched away from him, after which he "started banging his head on [I.H.'s] wall saying that he was so f'ing stupid." Tr. Vol. II, p. 69. Swygart then left I.H.'s bedroom.

[8] I.H.'s mother checked on I.H. in her bedroom after she returned home. When her mother entered the room, I.H. began crying. I.H. continued to cry as she

told her mother that Swygart had "raped" her. Tr. Vol. I, p. 248. I.H.'s mother responded by giving her medication to help her calm down. M.M. overheard I.H. tell their mother that Swygart had raped her.

[9] Shortly thereafter, an argument broke out when I.H.'s mother confronted Swygart about the allegations made by I.H. At some point during this argument, a window was broken after Swygart "put his fist through it." Tr. Vol. II, p. 4. Swygart injured his wrist in the process and had to bandage his wrist to stop it from bleeding. When I.H. awoke later that morning, I.H. noticed the injury to Swygart's wrist. I.H.'s mother also informed I.H. that she and Swygart "just wanted to keep [what had happened] in the family." Tr. Vol. II, p. 73. Swygart then apologized to I.H.

[10] Approximately one month later, Swygart began "trying to hit on" I.H., "calling [her] attractive and telling [her] that [they] could do it again if [she] wanted but [her] mom couldn't know." Tr. Vol. II, p. 77. When Swygart made these comments, I.H. attempted to change the subject. She reported Swygart's comments to her mother who "seemed really mad." Tr. Vol. II, p. 78. I.H.'s mother eventually took I.H. to I.H.'s maternal grandmother's home, telling her that I.H. "was her problem now." Tr. Vol. II, p. 80. I.H. started crying "[b]ecause [she] knew [her] mom didn't care" about what happened to her. Tr. Vol. II, p. 80. At some point, I.H.'s grandmother's partner informed I.H.'s biological father about what had happened. After discussing Swygart's actions with her biological father, I.H. reported Swygart's actions to the police.

Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Swygart with Count I–Level 4 felony child molesting based on the incident in the bathroom, Count II–Level 4 felony sexual misconduct with a minor based on the oral sex that occurred in I.H.'s bedroom, and Count III–Level 4 felony sexual misconduct with a minor based on the vaginal sex which occurred in I.H.'s bedroom. On February 28, 2017, Swygart proceeded to a jury trial, at the conclusion of which he was found guilty of all counts. Following a March 20, 2017 sentencing hearing, the trial court sentenced Swygart to an aggregate term of twenty-six years of incarceration, with twenty-three years executed and three years suspended to probation. This appeal follows.

# Discussion and Decision

## I. Sufficiency of the Evidence

Swygart challenges the sufficiency of the evidence to sustain his convictions.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The

evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

## A. Count I–Level 4 Felony Child Molesting

[13]   Swygart was charged under Count I as follows:

> The undersigned says that between July 1, 2014 and December 1, 2014 in Adams County, State of Indiana, Michael P. Swygart did perform fondling or touching on [I.H.], a child under the age of fourtween (14) years, to-wit: 13 years of age, with the intent to arouse or satisfy the sexual desires of the defendant, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-4-3(b) and against the peace and dignity of the State of Indiana.

Appellant's App. Vol. II, p. 107. Indiana Code section 35-42-4-3(b) provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Level 4 felony." "The intent element of

child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*.

[14] In challenging the sufficiency of the evidence to sustain his conviction for Level 4 felony child molesting, Swygart argues that (1) there is reasonable doubt as to whether the incident in the bathroom occurred and (2) the State failed to prove that he committed the alleged acts with the intent to arouse or satisfy his sexual desires. We disagree.

[15] As mentioned, I.H. testified that on one occasion when she was thirteen years old, Swygart forcibly grabbed her "thighs to pull [her] legs apart," placed his head between her legs, and spread her vagina apart with both of his hands. Tr. Vol. II, p. 58. We have previously concluded that "the uncorroborated testimony of a child victim is sufficient to support a conviction of child molesting." *Wisneskey v. State*, 736 N.E.2d 763, 764 (Ind. Ct. App. 2000). I.H.'s testimony is more than sufficient to establish the Swygart fondled her when she was under fourteen (14) years of age.

[16] As for Swygart's intent, we reiterate that "[t]he intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Bass*, 947 N.E.2d at 460. We have previously noted that an erogenous zone, such as one's genitals, or an area in close proximity to

an erogenous zone may be the source of sexual gratification. *See Nuerge v. State*, 677 N.E.2d 1043, 1049 (Ind. Ct. App. 1997) (providing that "[b]ecause the inner thigh is in close proximity to the genitals, an erogenous zone, it may itself be the source of sexual gratification."), *trans. denied*. In this case, Swygart placed his face near an erogenous zone after forcibly grabbing I.H.'s thighs and pulling her legs apart. With his head between I.H.'s legs, he then fondled I.H. by spreading her vagina apart with both of his hands. While fondling I.H., Swygart stared at her vagina for at least several seconds. I.H. was naked at the time as she had just gotten out of the shower. We believe that the jury could reasonably infer from the circumstances of this case that Swygart committed these acts with the intent to arouse or satisfy his sexual desires. As such, we conclude that the evidence is sufficient to sustain Swygart's conviction for Level 4 felony child molesting. Swygart's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## B. Counts II and III–Level 4 Felony Sexual Misconduct with a Minor

[17]     With respect to Counts II and III, Swygart was charged as follows:

> Count 2:
> The undersigned says that between June 1, 2015 and June 30, 2015 in Adams County, State of Indiana, Michael P Swygart, a person at least twenty-one (21) years of age, did perform sexual intercourse or other sexual conduct, as defined by I.C. 35-31.5-2-221.5, with [I.H.], a child at least fourteen (14) years of age but less than sixteen (16) years of age, to-wit: 14 years of age,

contrary to the form of the statutes in such cases made and provided by I.C. 35-42-4-9(a) and I.C. 35-42-4-9(a)(1) and against the peace and dignity of the State of Indiana.

Count 3:

The undersigned says that between June 1, 2015 and June 30, 2015 in Adams County, State of Indiana, Michael P Swygart, a person at least twenty-one (21) years of age, did perform sexual intercourse or other sexual conduct, as defined by I.C. 35-31.5-2-221.5, with [I.H.], a child at least fourteen (14) years of age but less than sixteen (16) years of age, to-wit: 14 years of age, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-4-9(a) and I.C. 35-42-4-9(a)(1) and against the peace and dignity of the State of Indiana.

Appellant's App. Vol. II, pp. 107-08. Indiana Code section 35-42-4-9(a) provides that "[a] person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits sexual misconduct with a minor, a Level 5 felony." The offense is a Level 4 felony if it is committed by a person at least twenty-one years of age. Ind. Code § 35-42-4-9(a)(1).

[18] Indiana Code section 35-31.5-2-221.5 defines the term "other sexual conduct" as follows: "(1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.H.'s testimony at trial is sufficient to sustain Swygart's convictions under both Counts II and III. I.H. testified that on the night in question, Swygart penetrated her vagina with his fingers, performed oral sex on her, and penetrated her vagina with his penis.

[19] In arguing that the evidence is insufficient to sustain his convictions for Counts II and III, Swygart claims that we should find I.H.'s testimony lacks credibility because it is "starkly different" from his own self-serving version of the events that occurred on the night in question.[1] Appellant's Br. p. 23. Review of the record shows that I.H.'s testimony was consistent. In addition, I.H.'s testimony that she reported the abuse to her mother at the first available opportunity and that Swygart cut his hand after he was confronted about I.H.'s claims was corroborated by other evidence in the record. Swygart's argument that I.H.'s testimony lacked credibility amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## II. Sentencing Issues

[20] Swygart next challenges his sentence. In doing so, Swygart contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriate. We disagree.

### A. Whether the Trial Court Abused Its Discretion in Sentencing Swygart

[21] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868

---

[1] Swygart claimed that he initially went to bed but got out of bed and went to sit on the front steps because he was nervous about an upcoming doctor's appointment.

N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490-91.

[22] Swygart argues that the trial court abused its discretion in two ways. First, Swygart argues that the trial court abused its discretion by failing to find certain factors to be mitigating. Second, Swygart argues that the trial court abused its discretion in ordering his sentences in Counts II and III to run consecutively to each other.

### 1. Failure to Find Certain Factors to be Mitigating

[23] The finding of mitigating factors is discretionary with the trial court. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993) (citing *Graham v. State*, 535 N.E.2d

1152, 1155 (Ind. 1989)). The trial court is not required to find the presence of mitigating factors. *Id*. (citing *Graham*, 535 N.E.2d at 1155). Further, the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed. *Id*. (citing *Hammons v. State*, 493 N.E.2d 1250, 1255 (Ind. 1986)). Likewise, if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id*. (citing *Hammons*, 493 N.E.2d at 1254-55).

[24] Swygart argues that the trial court abused its discretion by failing to find three particular factors to be mitigating: (1) the undue hardship that a lengthy incarceration would have on his dependents, (2) that he had responded affirmatively to probation in the past, and (3) that he had been a productive member of society and had "much support" from the community at-large. Appellant's Br. p. 29. We will discuss each in turn.

### i. Undue Hardship on Dependents

[25] A trial court is not required to find that a defendant's incarceration would result in undue hardship on his dependents. *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009); *see also Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). "Many persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell*, 720 N.E.2d at 1154.

The Pre-Sentence Investigation Report ("PSI") completed prior to sentencing indicates that while Swygart has three adult children, Swygart's parental rights to these adult children were terminated in 2002, and the children were subsequently "adopted separately." Appellant's App. Vol. III–Confidential, p. 6. When Swygart married I.H.'s mother, he became a step-father to M.M. and I.H. At the time of sentencing, M.M. was eighteen years old. Swygart's sole remaining dependent child is I.H., the victim of his crimes. We agree with the State that "[i]t would be improbable to consider the hardship [Swygart's] incarceration would place on his dependents when [Swygart] in fact does not have any minor dependents" other than the victim. Appellee's Br. p. 23. As such, we conclude that the trial court did not abuse its discretion to find the alleged undue hardship that Swygart's incarceration would allegedly have on his dependents to be a mitigating factor.

## ii. Prior Affirmative Response to Probation

Review of the record demonstrates that the trial court discussed Swygart's criminal history and noted that while the court "maybe [ ] could have" found Swygart's criminal history to be an aggravating factor, the trial court "will not find either aggravator or mitigatory with regard to [Swygart's] criminal history. I do that specifically." Tr. Vol. II, p. 212. In reaching this decision, the trial court balanced the fact that Swygart had previously been convicted of a crime of violence against the fact that he had apparently responded well to his punishment and had lived a law-abiding life, noting that his criminal history "is older." Tr. Vol. II, p. 212. As such, we agree with the State's contention that

"the trial court did consider [Swygart's] criminal record" and thus "did not neglect to consider [Swygart's] argument regarding that mitigatory." Appellee's Br. p. 23.

### iii.  Community Support

Swygart's alleged "community support" is better characterized as "family support." Swygart called two witnesses to speak on his behalf at sentencing. One was his son. Swygart's parental rights to this son were terminated in 2002, but the two men had reconnected once the son became an adult. The other was his wife, who also happens to be I.H.'s mother. Swygart also provided the trial court with a number of letters which were written on his behalf. All but one of these letters were written by Swygart's family members. The other was written by a friend. The record reveals that the trial court reviewed the submitted letters and listened to the testimony of the witnesses who appeared on Swygart's behalf. Again, the trial court is not required to weigh or credit the mitigating evidence the way Swygart suggests it should be credited or weighed or to explain why it has found that a proffered mitigating factor does not exist. *Fugate*, 608 N.E.2d at 1374. We cannot say that the trial court abused its discretion in failing to award mitigating weight to the fact that Swygart's family and friend believe him to be a person who deserves leniency.

## 2. Decision to Order Sentence for Counts II and III to Run Consecutively to Each Other

[29] We have previously concluded that so long as a defendant's convictions do not violate the prohibitions against double jeopardy[2] and the sentence does not violate applicable statutory mandates, "[a] trial court may impose consecutive sentences for separate and distinct crimes that arise out of a single confrontation involving the same victim." *Vermillion v. State*, 978 N.E.2d 459, 466 (Ind. Ct. App. 2012). The Indiana General Assembly has defined an "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind. Code § 35-50-1-2(b). "[T]he total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following: … (3) If the most serious crime for which the defendant is sentenced is a Level 4 felony, the total of the consecutive terms of imprisonment may not exceed fifteen (15) years." Ind. Code § 35-50-1-2(d).

[30] The trial court's sentencing order indicates that the trial court sentenced Swygart to terms of seven years for both Counts II and III. Thus, when added together, the total consecutive term of imprisonment to which Swygart was sentenced for his convictions relating to the events which occurred in I.H.'s bedroom was fourteen years. Given our opinion in *Vermillion* coupled with the

---

[2] Swygart does not develop an argument that his convictions violated the prohibitions against double jeopardy.

fact that fourteen years is less than the fifteen-year maximum set forth for a Level 4 felony in Indiana Code section 35-50-1-2(d), we cannot say that the trial court abused its discretion in ordering the sentences imposed in Counts II and III to be served consecutively to each other.

## B. Whether Swygart's Sentence is Inappropriate

[31] Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[32] In challenging the appropriateness of his sentence, Swygart does not present any argument that his sentence is inappropriate in light of the nature of his offenses. As to his character, Swygart argues that at the time of sentencing, he was forty-two years old and had not been convicted of any crimes since 2002. He also points to the fact that he had been gainfully employed for over twenty

years and that his family and friends found him to be hardworking and trustworthy.

[33] The Indiana Supreme Court has held that a harsher sentence is more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child relationship. *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). Swygart's actions and character reveal that he violated such a position of trust by committing sexual misconduct on his young step-daughter. Swygart has failed to meet his burden of persuading us that his aggregate twenty-six-year sentence is inappropriate.

# Conclusion

[34] In sum, we conclude that the evidence is sufficient to sustain Swygart's convictions, the trial court did not abuse its discretion in sentencing Swygart, and Swygart's sentence is not inappropriate. As such, we affirm the judgment of the trial court.

[35] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.