## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2018, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sherry Vernell Webb,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff.*

August 10, 2018

Court of Appeals Case No.
18A-CR-507

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1708-F5-106

**Brown, Judge.**

[1] Sherry Vernell Webb appeals her convictions for intimidation as a level 5 felony and criminal recklessness and possession of marijuana as class B misdemeanors. Webb raises one issue which we revise and restate as whether the trial court abused its discretion in not admitting certain evidence. We affirm.

## Facts and Procedural History

[2] On March 31, 2017, Malinda Solomon drove her vehicle to pick up Robert Crisler at an apartment building, parked her vehicle in the parking lot, entered the building, knocked on the door to Robert and his wife Ethel's apartment, and was let inside. Webb, who lived in a neighboring apartment, was in the apartment with Robert and Ethel. At some point, Webb stood up and said "that's the b---- that doesn't like me." Transcript Volume II at 34. Solomon attempted to avoid Webb, and Webb exited the apartment and, in doing so, brushed Solomon's shoulder and nearly knocked her off of her feet. Solomon told Robert that she would be outside, exited the building, and pulled her vehicle into a parking space near the building exit.

[3] Robert and Ethel exited the apartment building, Webb was behind Robert and Ethel, and Solomon heard Webb "saying something to the effect of you not going no mother f---ing where." *Id*. at 38. Solomon observed that Webb was holding a black gun and that she struck the passenger side of Solomon's vehicle with the gun. Webb moved toward the rear of Solomon's vehicle, Ethel heard a "popping sound," and Solomon heard Ethel say "she shot." *Id*. at 55, 40. Ethel heard Webb say "this bitch isn't going anywhere and that will not either."

*Id*. at 55. Webb then reentered the apartment building. Solomon exited her vehicle, discovered that her tire had been shot, and called the police.

[4] Lafayette Police Officer Ian O'Shields responded to the scene, observed that Solomon's vehicle had a flat tire and a hole in it, and "located a 380 shell casing two or three feet from the tire." *Id*. at 64. Officer Cassandra Leuck, who was a firearms instructor, entered Webb's apartment, located Webb in a back bedroom with the door closed, and made several commands for her to exit, and she eventually did. Webb immediately began yelling at Officer Leuck and was sweating profusely. Officer Leuck obtained a warrant to search Webb's residence, and police discovered marijuana, a small manila envelope containing a label indicating the envelope was associated with a Ruger with a caliber of "380 AUTO,"[1] a box for a Ruger handgun, and a box of ammunition for a nine millimeter. State's Exhibit 8.

[5] The State charged Webb with: Count I, intimidation as a level 5 felony[2]; Count II, criminal recklessness as a level 6 felony; Count III, criminal mischief as a class B misdemeanor; and Count IV, possession of marijuana as a class B misdemeanor. At Webb's trial, a jury heard testimony from Solomon, Ethel, Officer O'Shields, Officer Leuck, and Webb, among others. Ethel testified that

---

[1] Officer Leuck testified "when you purchase a handgun, inside of the box typically, is a small manila envelope that is located a spent shell casing from that gun specifically" and "[o]n that it shows what gun it goes to, what caliber and I believe also what . . . serial number of the gun that it was shot out of." Transcript Volume II at 103.

[2] The State alleged that, while committing the offense of intimidation, Webb did draw or use a handgun.

she observed Webb walk from the front to the rear of Solomon's vehicle, heard a noise like a popping sound, saw Webb walk back to the apartment building, and when asked if Webb had anything with her at that time, that she had "seen what [she] thought was a toy gun." Transcript Volume II at 55. Ethel testified the object was black and the "size of a 32 or 38 or something." *Id*. at 56. During the cross-examination of Officer Leuck, Defense counsel asked if firearms leave behind residue when they discharge, and Officer Leuck responded affirmatively. The State objected to the line of questioning about gunshot residue, and the court sustained the objection. The jury found Webb guilty as charged.

[6] The court sentenced Webb to three years for her conviction for intimidation as a level 5 felony under Count I; sentenced her to 180 days for her conviction for criminal recklessness and reduced the charge to a class B misdemeanor under Count II; found that Count III merged with Count II and declined to enter conviction on Count III; and sentenced her to 180 days for her conviction for possession of marijuana as a class B misdemeanor under Count IV. The court ordered that Counts I and II be served concurrently and that Count IV be served consecutive to Count I for an aggregate sentence of three and one-half years. The court also ordered that Webb execute 180 days as a direct placement with Tippecanoe County Community Corrections and that three years be suspended to probation.

## *Discussion*

[7] Webb claims the trial court abused its discretion in excluding evidence regarding gunshot residue testing. The trial court has broad discretion to rule on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). We review its rulings for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances. *Id.* Even when a trial court errs in excluding evidence, we will not find reversible error where that error is harmless; that is, where the error did not affect the substantial rights of a party. *See* Ind. Trial Rule 61.

[8] The record reveals that, during defense counsel's cross-examination of Officer Leuck, the following colloquy occurred:

> Q [Defense Counsel]  Okay. And you said earlier that you were a firearms instructor?
>
> A [Officer Leuck]  Correct.
>
> * * * * *
>
> A  I'm a firearms instructor for Lafayette Police Department yes.
>
> Q  Okay and when firearms discharge they leave behind residue?
>
> A  Yes.
>
> Q  Depends on the type of powder, depends on type of powder -
>
> [Prosecutor]:  Objection can we approach?
>
> The Court:   Yes.
>
> (Sidebar begins at 4:01 p.m.)

[Prosecutor]:  (Inaudible).

[Defense Counsel]:  They're the ones who put it at issue.  That was the first question.

The Court:  Let's take a sidebar.  We're going to take a quick sidebar.  Okay we're on the record, there was a question about gunshot residue that was discharged when a firearm is discharged and you asked the witness do guns - the residue (inaudible) and I think the witness said yes and then the state objected.

[Prosecutor]:  And I would just do to [sic] a continuing objection to the whole line of questioning about gunshot residue.  It's [sic] presence or absence.  First off because this witness is not necessarily qualified to testify about it, it's not good science.

The Court:  What do you mean by that?

[Prosecutor]:  That the Indiana state police laboratory does not do any gunshot residue testing.  The police don't do instant tests for presence of absence of gunshot residue testing.  The police don't do instant tests for presence or absent [sic] the gunshot residue because it has been shown to not be reliable science.

The Court:  [Defense counsel].

[Defense Counsel]: They're the ones that put her expertise and firearms at issue.  In fact, it was one of the first questions to this witness I think as a firearms instructor.

The Court:  I don't know that they qualified her in terms of the scientific test regarding residue.

[Defense Counsel]:  Okay so I can ask her about she answered affirmatively about the residue.

[Prosecutor]: She did.

The Court:  And so, you're objecting to any further questions?

[Prosecutor]: Any further questions on this issue.

The Court: I'll sustain that objection.

[Defense Counsel]: Very well.

(Sidebar ends at 4:04 p.m.)

The Court: The objection is sustained you can continue your questions.

Transcript Volume II at 118-120.

[9] Webb argues that several tests related to residue identification have achieved recognition in the scientific community, that Indiana courts have implicitly recognized the capability of testing to determine the presence or absence of gunshot residue, and that the State's assertion that neither the Indiana State Police laboratory nor local police agencies perform gunshot residue testing does not equate with it having been shown to be unreliable science. The State responds that Webb did not make an offer to prove what the excluded testimony would have been or shown and that therefore her argument is waived. It further argues that Officer Leuck's testimony did not establish that she knew anything about gunshot residue or residue testing, that there was no evidence that a residue test was performed on Webb to see if she bore evidence of residue, and that any error in the court's ruling is harmless.

[10] Ind. Evidence Rule 103(a) provides that "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party" and that, "[i]f the ruling excludes evidence, a party informs the court of

its substance by an offer of proof, unless the substance was apparent from the context." It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness's testimony. *Barnett v. State*, 916 N.E.2d 280, 287 (Ind. Ct. App. 2009) (citing *Dowdell v. State*, 720 N.E.2d 1146, 1150 (Ind. 1999)), *trans. denied*. An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded. *Id*.

[11] Webb did not request or present an offer of proof in order to establish that Officer Leuck possessed specific expertise with respect to gunshot residue, that any gunshot residue assessment may have been completed, or that any gunshot residue was or was not found on Webb. Based upon the record, we cannot find the court abused its discretion in not permitting Webb to elicit additional testimony from Officer Leuck regarding gunshot residue before the jury. *See Dowdell*, 720 N.E.2d at 1150 (holding that the defendant's failure to make an offer of proof waived any error).

[12] In addition, even if an error occurred, the error is harmless. An error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of a party. *Gault v. State*, 878 N.E.2d 1260, 1267-1268 (Ind. 2008). The State presented testimony that Solomon observed Webb strike the passenger side of her vehicle with a gun, that Solomon and Ethel observed Webb move to the rear of Solomon's vehicle, that Ethel heard a popping sound, and that Solomon exited her vehicle and discovered a hole in the rear passenger-side tire of her

vehicle. Police subsequently discovered a spent 380-caliber shell casing near the flat tire of Solomon's vehicle and located a box for a gun and an envelope associated with a 380-caliber gun in Webb's apartment. We conclude that any error in refusing Webb's attempt to continue questioning Officer Leuck regarding gunshot residue did not affect Webb's substantial rights and is harmless.

## *Conclusion*

[13] For the foregoing reasons, we affirm Webb's convictions.

[14] Affirmed.

Vaidik, C.J., and Altice, J., concur.